UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTINA N. M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-00716-MPB-MKK |
| | ) |
| MARTIN O'MALLEY[1], | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Christina N. M.[2] requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c).

On November 28, 2023, United States District Judge Matthew P. Brookman entered an Order referring this matter to the undersigned for a report and recommendation regarding the appropriate disposition pursuant to 28 U.S.C. § 636. (Dkt. 13). For the reasons set forth below, the undersigned recommends that the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

[2] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The undersigned has elected to implement that practice in both the body and caption of this Report and Recommendation.

Commissioner's decision denying the Plaintiff benefits be **REVERSED** and **REMANDED** for further proceedings.

I.   PROCEDURAL HISTORY

In or around April 2021, Christina protectively filed an application for disability benefits. (Dkt. 7-5 at 2-9, R. 174-81). Christina's application alleged disability resulting from a variety of conditions, including fibromyalgia, endometriosis, irritable bowel syndrome, cluster headaches, and chronic migraines. (Dkt. 7-6 at 6, R. 209). The Social Security Administration ("SSA") denied Christina's claim initially on August 2, 2021, (Dkt. 7-4 at 3-6, 8-11; R. 93-96, 98-101), and on reconsideration on November 18, 2021, (*id.* at 15-16, 20-21; R. 105-106, 110-111). On December 17, 2021, Christina filed a written request for a hearing, which was granted. (*Id.* at 22-30, R. 112-20).

On June 28, 2022, Administrative Law Judge ("ALJ") Elias Xenos conducted a hearing where Christina, her counsel, and vocational expert ("VE") Marne South all appeared telephonically. (Dkt. 7-2 at 18, R. 17). On August 24, 2022, the ALJ issued an unfavorable decision finding that Christina was not disabled. (*Id.* at 15-31, R. 14-30). Christina appealed the ALJ's decision, and on March 8, 2023, the Appeals Council denied Christina's request for review, making the ALJ's decision final. (*Id.* at 2-4, R. 1-3). Christina now seeks review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 405(g).

**II.   STANDARD OF REVIEW**

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).[3] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves h[er] unable to perform h[er] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

---

[3] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to SSI benefits. Often, the parallel section pertaining to the other type of benefits—DIB— is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a). Because the statutory references for SSI and DIB claims are substantially similar, the undersigned may reference them interchangeably throughout this opinion.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. "If a claimant satisfies steps one and two, but not three, then [s]he must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). "Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Id.*; *see also* 20 C.F.R. § 416.920. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her

4

age, education, job experience, and RFC to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(g).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence and free of legal error. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citations omitted); *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Christina is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence and free of legal error. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions

of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'") (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). "Nevertheless, [the Court must] conduct a 'critical review of the evidence' before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III. BACKGROUND

#### A. Factual Background

Christina was 30 years old on the alleged onset date of December 1, 2020. (Dkt. 7-6 at 2, R. 205). She has a high school degree. (*Id.* at 7, R. 210). She has past relevant work as a clerk-typist, pharmacy stock clerk, service writer, cashier, and mechanic helper. (Dkt. 7-2 at 57, R. 56; Dkt. 7-6 at 7-8, R. 210-11).

#### B. ALJ Decision

In determining whether Christina qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Christina was not disabled. (Dkt. 7-2 at 19-31, R. 18-30). At Step One, the ALJ found that Christina had not engaged in substantial gainful activity since the alleged onset date of December 1, 2020. (*Id.* at 20, R. 19).

At Step Two, the ALJ found that Christina had severe impairments of fibromyalgia syndrome, migraines, neuropathy, irritable bowel syndrome, sacroiliitis, lumbar disc disease, and obesity. (*Id.*). The ALJ also found Christina to have the following non-severe impairments: asthma, pulmonary nodule, GERD, endometriosis, and hypothyroidism. (*Id.* at 21, R. 20). The ALJ also concluded that Christina had non-severe mental impairments of anxiety and depression. (*Id.*).

At Step Three, the ALJ found that Christina's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Dkt. 7-2 at 22-23, R. 21-22). As to the "paragraph B" criteria, the ALJ found Christina had mild limitations in: understanding,

7

remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.* at 21, R. 20). In the area of interacting with others, the ALJ found that Christina had no limitation. (*Id.*).

After Step Three but before Step Four, the ALJ found that Christina had the RFC to perform sedentary[4] work with the following limitations:

> [T]he claimant cannot crawl, kneel, or climb ladders, ropes, or scaffolding. The claimant can occasionally stoop, crouch, balance (on narrow, slippery, or erratically moving surfaces), and climb ramps and stairs. The claimant can frequently handle, finger, and feel with the bilateral upper extremities. The claimant must avoid all exposure to unprotected heights and use of hazardous machinery, and must avoid concentrated exposure to extreme cold, extreme heat, humidity, and vibrations. The claimant can occasionally use computer video screens, but must avoid exposure to bright or flickering lights…or more than "moderate" noise levels [ ]. The claimant requires a sit/stand option, allowing her the opportunity (but not requiring her) to stand for 5-10 minutes after sitting continuously for 30-45 minutes.

(*Id.* at 23, R. 22). At Step Four, the ALJ concluded that Christina was unable to perform her past relevant work. (*Id.* at 29, R. 28).

At Step Five, relying on the VE's testimony and considering Christina's age, education, work experience, and RFC, the ALJ concluded that Christina could perform jobs that exist in significant numbers in the national economy. (*Id.* at 29-30, R. 28-29). Ultimately, the ALJ concluded that Christina was not disabled. (*Id.* at 30, R. 29).

---

[4] Sedentary work requires an individual to be able to stand or walk no more than 2 hours per 8-hour workday, sit about 6 hours per workday, and lift up to 10 pounds. 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, at *3; SSR 83-10, 1983 WL 31251, at *5-6.

## IV. ANALYSIS

Christina presents two arguments. (Dkt. 9 at 20-35). First, she argues that the RFC analysis is flawed because it "lacks clarity and specificity regarding the sit/stand option, does not account for Christina's fatigue and need for daily naps, and does not account for inevitable time off task while dealing with a migraine." (*Id.* at 20). Essentially, she argues that the RFC is unsupported and fails to account for her impairments. The Commissioner responds that the ALJ's decision was supported by substantial evidence and that the RFC sufficiently accounted for Christina's fatigue and migraine headaches. (Dkt. 11 at 4-16). Second, Christina argues that the ALJ's subjective symptom analysis was flawed. (Dkt. 9 at 26-35). The Commissioner argues to the contrary. (Dkt. 11 at 11-16). Because the undersigned recommends remand on the grounds of a flawed RFC analysis, the Court declines to address the subjective symptom analysis argument.

The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). When determining the RFC, the Regulations and Seventh Circuit case law make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga* for same proposition); *Denton v. Astrue*, 596 F.3d 419, 423

(7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); 20 C.F.R. § 416.945(a). Furthermore, if an ALJ relies on testimony from a VE, the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga*, 794 F.3d at 813 (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). Although "[t]he ALJ need not use any 'magic words' in formulating a person's [RFC]," his or her analysis must nevertheless "say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

Here, as noted, Christina alleges the ALJ failed to adequately account for her migraine headaches and fatigue when formulating the RFC. Christina testified and presented evidence that she suffers from migraine headaches, fibromyalgia, and fatigue requiring daily naps for more than two and a half hours. (Dkt. 7-2 at 52, R. 51; *see also id.* at 55, R. 54 ("daily headaches and then migraines three or four days a week")). Her testimony was consistent with her function report. (*See* Dkt. 7-6 at 29, R. 232 ("I take [my son] to school then come home to rest or nap…I rest until my son is out of school then have dinner. I rest until bed."); *id.* at 48, R. 251 (After waking up and preparing breakfast and lunch for my son, I "rest until I drive him to school. I come home, rest until lunch and time to feed the cats. I try to do 10-15 minutes of chores, then rest until time to pick up my son. I help my husband with

10

dinner then rest until time to get my son ready for bed.")). Additionally, Christina reported chronic fatigue requiring daily naps to her treating physicians, an inability to work (and 4-5 days per month where she could not get out of bed), and medications causing drowsiness. (Dkt. 7-2 at 54, R. 53; Dkt. 7-6 at 26, 35, 54, R. 229, 238, 257; Dkt. 7-7 at 5, 27, 34, 63, 74, 105, 110-11, 113, 135-37, 145; R. 280, 302, 309, 338, 349, 380, 385-86, 388, 410-12, 420; Dkt. 7-8 at 47, 367, 372, 412, 426, 453, 455; R. 495, 815, 820, 860, 874, 901, 903; Dkt. 7-9 at 295-98, R. 1266-69). In response, her physicians prescribed various medications to address her migraine symptoms (as well as symptoms associated with other impairments). (Dkt. 7-8 at 46-47, 50-54, 73, 78-83, 86-87, 93; R. 494-95, 498-502, 521, 526-31, 534-35, 541).

Migraine headaches are difficult to assess. They are so variable that claimants "may be symptom-free and unimpaired for some time," but then suffer migraines so severe that they are required to miss work. *Dennie K. K. v. Comm'r of Soc. Sec.*, No. 21-CV-01188-SPM, 2022 WL 17830498, at *4 (S.D. Ill. Dec. 21, 2022). If a claimant suffers migraines that are severe enough to force her to miss work, just two migraines a month or one migraine a day, depending on their severity, could be disabling. (*See* Dkt. 7-2 at 60-61, R. 59-60 (VE testimony that being off task more than 10% of an eight-hour day would preclude work)). Chronic pain and fatigue – such as that which can be associated with fibromyalgia, one of Christina's other severe impairments – present similar difficulties when it comes to symptom assessment. *See Hohman v. Kijakazi*, 72 F.4th 248, 242 (7th Cir. 2023) ("We have previously observed that disability claims rooted in the effects of fibromyalgia

11

warrant careful attention given the nature of the illness. . . . The Social Security Administration also recognizes the complexity of fibromyalgia and the importance of subjective evidence in assessing a claimant's ability to work. *See* SSR 12-2P, 2012 WL 3104869."). And the interplay between Christina's various impairments is significant, for the ALJ must consider all her impairments – both severe and non-severe – in combination when formulating the RFC. *Denton*, 596 F.3d at 423; *see also Tammy M. v. Saul*, No. 2:20cv285, 2021 WL 2451907, at *10 (N.D. Ind. June 16, 2021) (finding that the ALJ "failed to assess [claimant's] fatigue and tiredness and whether that required additional breaks," and that the "failure to analyze the functional impact of [the claimant's] fatigue [wa]s heightened given that the ALJ found fibromyalgia was a severe impairment and the Agency's Ruling acknowledges fatigue as a symptom of fibromyalgia") (citing SSR 12-2p).

      Because migraines fluctuate and can be partially or completely disabling while they are occurring, it is generally important for an ALJ to include an absenteeism rate when determining the RFC of a claimant who suffers from migraines. *Dennie K.K.*, 2022 WL 17830498, at *4; *see also Moore*, 743 F.3d at 1126. Additionally, in cases where claimants suffer from migraine headaches that require them to retreat to a dark room to alleviate symptoms, this must be accounted for in the RFC analysis. *See Melissa Q. v. Kijakazi*, No. 21 C 5456, 2023 WL 2333296, at *4 (N.D. Ill. Mar. 2, 2023) (ALJ erred by failing to account for claimant's asserted need to lie down during the day to control pain); *Frank C. v. Kijakazi*, No. 21 C 4090, 2023 WL 1779862, at *3 (N.D. Ill. Feb. 6, 2023) (same).

Moreover, "[w]here an ALJ finds that a claimant suffers headaches and those headaches constitute a medically determinable severe impairment, an ALJ must explain how []he considers the severity and frequency of those headaches and how the fluctuating nature of headaches impacts a claimant's ability to work." *Linda K. v. Kijakazi*, No. 20 C 02732, 2022 WL 2463556, at *3 (N.D. Ill. July 6, 2022) (quoting *Charlene J. v. Saul*, No. 17 C 2832, 2020 WL 2404874, at *2 (N.D. Ill. May 12, 2020)). "The ALJ's failure to do so—and use of unexplained restrictions that seemingly have little connection to Plaintiff's headaches—warrants remand." *Id.*; *see also Ann J. on behalf of David J. v. Kijakazi*, No. 1:21-CV-00374-JPH-MG, 2022 WL 4591450, at *3 (S.D. Ind. Sept. 30, 2022) (ALJ erred by failing to address headache evidence that supported time off-task or absence limitations); *Lizette C. v. Kijakazi*, No. 21 C 3517, 2022 WL 3369274, at *2 (N.D. Ill. Aug. 16, 2022) (ALJ's failure to include migraine limitations in RFC was reversible error).

Here, the ALJ found Christina's migraines to constitute a severe impairment. (Dkt. 7-2 at 20, R. 19). And, although the ALJ enumerated at length the efficacy of treatment on Christina's migraines, (*id.* at 25-29, R. 24-28), he nevertheless accommodated them by including several limitations: "avoid[ing] concentrated exposure to extreme cold, extreme heat, humidity, and vibrations; limiting use of computer screens to "occasionally"[5]; and "avoid[ing] exposure to bright or flickering

---

[5] Occasional, in this context, is a term of art which means "occurring from very little up to one-third of the time." Titles II & XVI: Determining Capability to Do Other Work-the-Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).

13

lights . . . or more than 'moderate' noise levels." (*Id.* at 23, R. 22; *see also id.* at 28; R. 27). The RFC does not appear to contain additional restrictions related to migraines.[6]

Nor does the RFC contain any off-task or absenteeism limitation.[7] While it is true that the ALJ included restrictions on screens (as well as lights, temperature, and noise) to accommodate Christina's migraines, the ALJ failed to acknowledge that she was already limiting her screen time—but still having migraines. (*Id.* at 50-51, R. 49-50). The ALJ also placed heavy emphasis on the fact that Christina's treatment plan was effective in controlling her migraine symptoms. (*Id.* at 28, R. 27; *see also* Dkt. 7-7 at 27, R. 302 ("currently on emgality and migraines are much better controlled"); Dkt. 7-8 at 81, R. 529 ("Excellent response to Emgality thus far *with only a couple migraines per month*") (emphasis added); *id.* at 86, R. 534 ("continues to see great improvement with use of Emgality")). But, be that as it may, she testified that she still suffered from headaches daily and had migraines "three or four days a week." (Dkt. 7-2 at 55, R. 54). Thus, while their recurrence was perhaps improved by the medication, Christina's headaches and migraines were

---

[6] The RFC requires Christina to have a sit/stand option, (Dkt. 7-2 at 23, R. 22 ("The claimant requires a sit/stand option, allowing her the opportunity (but not requiring her) to stand for 5-10 minutes after sitting continuously for 30-45 minutes.")), but this aspect of the RFC appears to be tied more to her neuropathy than to her migraines, (*see id.* at 28, R. 27 ("the claimant's history of neuropathy and headaches, which warrant additional manipulative and environmental limitations, in addition to the ability for her to change positions between sitting and standing at reasonable intervals")).

[7] Although a casual reader might think of a sit/stand option as a type of break or off-task accommodation, the ALJ did not make any definitive statement to this effect. Moreover, his hypothetical to the VE indicates the opposite: as noted above, anything other than 10% off-task time would be work-preclusive, so the time allotted for standing (up to 10 out of every 40 minutes) must necessarily be "on task" time in the eyes of the ALJ. If not, he should have said so.

14

nonetheless frequent. Since Christina stated that the only things that helped her manage migraines were medication and going into a dark room and lying down/slightly propped up, (Dkt. 7-6 at 26, R. 229), it is unclear why the ALJ left out any acknowledgment of off-task time and absenteeism from his opinion. *See Farley v. Berryhill*, 314 F. Supp. 3d 941, 947 (N.D. Ill. 2018) ("But mentioning [medication, injections, and physical therapy to quell pain]—or 'recognizing' them, as the Commissioner puts it—doesn't let the reviewing court know what the ALJ thought about them and how they played into the ALJ rejecting [claimant's] allegations." *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ must 'engage sufficiently with the evidence' to allow the reviewing court to follow her reasoning)…"). The ALJ appears to have decided that neither limitation was warranted, but his explanation needed to more thoroughly articulated in light of this evidence. *See Harris v. Kijakazi*, No. 1:21-CV-01676-RLY-DLP, 2022 WL 4591452, at *3 (S.D. Ind. Sept. 30, 2022) (ALJ erred by failing to consider subjective migraine symptoms' "likely effect on absenteeism"); *Kimberly S. v. Kijakazi*, No. 4:21-cv-55, 2022 WL 1744643, at *10 (N.D. Ind. May 27, 2022) (ALJ erred by failing to address migraine symptoms in the RFC).

      This absence of any off-task time or absentee limitations becomes even more problematic when considering Christina's fibromyalgia, her chronic fatigue, and the evidence that she takes two naps per day. (Dkt. 7-2 at 56, R. 55). When combined with the record regarding migraines, this fatigue and pain evidence further magnifies the need for a thorough discussion of off-task time and absenteeism. The

15

cumulative effect of different impairments must be considered, and a properly constructed RFC must account for "the combination of all limitations on the ability to work," even those resulting from non-severe impairments. *Denton,* 596 F.3d at 423. Again, the ALJ ultimately might decide to reject an off-task time and/or absenteeism limitation, but a reader must understand why.

In summary, the ALJ here neither assigned a percentage nor explained with any meaningful specificity why Christina's headaches, fibromyalgia, and chronic fatigue, particularly when considered in combination, would not result in her being off-task or absent for a percentage of the workday. The Court finds this omission troubling given the VE's testimony that more than 10% off-task behavior would be work-preclusive. (Dkt. 7-2 at 60-61, R. 59-60). Based on all of the above, the undersigned cannot conclude that the ALJ's RFC analysis is supported by substantial evidence and recommends remanding this matter for further consideration.

## V. CONCLUSION

In summary, the ALJ's cursory treatment of the various issues discussed above undermines the support for the RFC. For the reasons detailed herein, the undersigned recommends that the ALJ's decision denying Plaintiff benefits be **REVERSED** and **REMANDED** for further proceedings.

Any objections to the Magistrate Judge's Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO RECOMMENDED.

Date: 07/01/2024

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution: All counsel of record via CM/ECF.