UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTINA M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-00716-MPB-MKK |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

## ENTRY AFFIRMING MAGISTRATE JUDGE'S DECISION

Plaintiff Christina M.[1] petitioned the court for judicial review of the Commissioner of Social Security Administration's final decision denying her application for Social Security Disability Insurance Benefits ("DIB"). (Docket No. 1). The case was referred to the Magistrate Judge for consideration. (Docket No. 13). On July 1, 2024, the Magistrate Judge issued a Report and Recommendation concluding that the Commissioner's decision should be reversed and remanded. (Docket No. 16). The Commissioner filed a timely objection to the Magistrate Judge's Report and Recommendation ("R&R"), which the Court now addresses. (Docket No. 17). For the reasons that follow, this Court **OVERRULES** the Commissioner's Objection (Docket No. 17), **ADOPTS** the Magistrate Judge's Report and Recommendation (Docket No. 16), and **REMANDS** to the agency for further consideration consistent with this order.

---

[1] To protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security review opinions.

## I. STANDARD OF REVIEW

In reviewing the decision of an Administrative Law Judge ("ALJ"), the district court affirms if the ALJ's factual findings are supported by substantial evidence and there are no errors of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The district court will also "determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). The court confines the scope of its review to the rationale offered by the ALJ. *Tumminaro v. Astrue*, 671 F.3d 629, 632 (7th Cir. 2011).

When considering a party's specific objections to a Magistrate Judge's Report and Recommendation, the district court reviews those elements *de novo*, determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of error of law. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). *De novo* review requires a re-examination of the case with a fresh set of eyes and "an independent judgment of the issues." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir. 1984). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336, F.3d 535, 539 (7th Cir. 2003)). After review, the court is empowered to adopt, reject, or modify the recommendations of the Magistrate Judge. Fed. R. Civ. P. 72(b).

## II. FACTUAL BACKGROUND

The ALJ's decision finding the Plaintiff not disabled followed the required five-step evaluation process in 20 C.F.R. § 404.1520. Specifically, the ALJ found:

- At Step One, "claimant has not engaged in substantial gainful activity since December 1, 2020, the alleged onset date." (Docket No. 7-2 at ECF p. 20).

- At Step Two, "claimant has the following severe impairments: fibromyalgia syndrome; migraines; neuropathy; irritable bowel syndrome; sacroiliitis; lumbar disc disease; obesity." (*Id.*).

- At Step Three, "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at ECF p. 22).

- After Step Three but before Step Four, that "claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that the claimant cannot crawl, kneel, or climb ladders, ropes, or scaffolding. The claimant can occasionally stoop, crouch, balance (on narrow, slippery, or erratically moving surfaces) and climb ramps and stairs. The claimant can frequently handle, finger, and feel with the bilateral upper extremities. The claimant must avoid all exposure to unprotected heights and use of hazardous machinery, and must avoid concentrated exposure to extreme cold, extreme heat, humidity, and vibrations. The claimant can occasionally use computer video screens, but must avoid exposure to bright or flickering lights (such as would be experienced with welding or cutting metals) or more than 'moderate' noise levels (as defined in the SCO). The claimant requires a sit/stand option, allowing her the opportunity (but not requiring her) to stand for 5-10 minutes after sitting continuously for 30-45 minutes." (*Id.* at ECF p. 23).

- At Step Four, "claimant [was] unable to perform any past relevant work." (*Id.* at ECF p. 29).

- At Step Five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*).

- Finally, the ALJ concluded that the claimant has "not been under a disability, as defined in the Social Security Act, from December 1, 2020, through the date of this decision." (*Id.* at ECF p. 30).

### III.     ANALYSIS

The ALJ concluded that the Plaintiff had the residual functional capacity to perform some sedentary work. (Docket No. 7-2 at ECF p. 23). In the R&R, the Magistrate Judge disagreed, and noted that the RFC analysis was deficient because the ALJ left out "any acknowledgment of off-task time and absenteeism from his opinion." (Docket No. 16 at ECF p. 15). The Commissioner argues that the Magistrate Judge's R&R did not account for the fact that the Plaintiff's argument "relied primarily on her own subjective statements and provided insufficient objective corroboration to support such limits, such as objective medical findings or medical source opinions." (Docket No. 17 at ECF p. 2). Additionally, the Commissioner argues that the Magistrate Judge's order improperly shifts the burden of proving the claimant's work limits from the claimant to the ALJ. (*Id.*).

**A. Migraines and Fatigue**

An "'ALJ's RFC assessment must incorporate *all* of the claimant's limitations supported by the medical record' including even moderate limitations." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (emphasis added). "In the world of disability claims, migraines are a challenging impairment." *Dennie K. K. v. Comm'r of Soc. Sec.*, No. 21-CV-01188, 2022 WL 17830498, at *4 (S.D. Ill. Dec. 21, 2022). While an ALJ must heavily assess the claimant's subjective symptoms, *Dennie K. K.*, 2022 WL 17830498, at *4, they are not required to credit the claimant's testimony, *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014), and "need only include limitations that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). An ALJ determining the RFC of a claimant suffering from migraines "usually should include the likelihood of missing work." *Dennie K. K.*, 2022 WL 17830498, at *4; *see also Moore*, 743 F.3d at 1127.

In *Crump*, when creating a hypothetical for the vocational expert, the ALJ correctly incorporated the claimant's ability to perform simple tasks as well as her need to be off task twenty percent of the time or requiring two unscheduled absences per month. *Crump*, 932 F.3d 570. However, after the vocational expert "opined that a person so limited would lack the functional capacity to sustain *any* employment," the ALJ failed to incorporate this opinion in the RFC, thus committing error by "leaving the RFC altogether uninformed by considerations of off-task time or unplanned leave." *Id.* (emphasis in original).

Meanwhile, in *Denton v. Astrue*, a claimant argued that the ALJ had erred by not considering several of her symptoms and related factors of her illness when formulating her RFC. 596 F.3d 419, 423 (7th Cir. 2010). There, the Seventh Circuit concluded that: (1) the ALJ had fully considered the claimant's illnesses and symptoms, and (2) the claimant failed to produce medical evidence to support the limitations she alleged necessary. *Id.* at 424; *see also Fanta v. Saul*, 848 F. App'x 655, 659 (7th Cir. 2021) (Plaintiff "does not point to any objective evidence or medical opinions in the record that support stricter limitations.").

Here, the facts are more in line with *Crump* than *Denton*. The Commissioner is correct that an ALJ does not need to rely on a claimant's own subjective statements without sufficient corroboration. However, the Commissioner is wrong that the Plaintiff offers no medical findings in support of additional limitations. The Plaintiff, in fact, cites to evidence that the ALJ also mentioned: that according to doctor's notes from 2020, claimant's migraines reduced from as often as five times per week to only a handful of times per month due to an "excellent response" to a new medication. (Docket No. 7-2 at ECF p. 25). However, while the ALJ viewed this as evidence that the Plaintiff was markedly better, the Plaintiff emphasizes that this note shows that she still suffered from migraines several times per month. (Docket No. 7-7 at ECF p. 159). The

doctor also noted that the Plaintiff was unlikely to ever reach a point in which she had no migraines. (*Id*. at ECF p. 160). It is true that the Plaintiff took herself off her migraine medication while she pursued pregnancy and then breastfeeding, however, the doctor who saw her following her return to medication still noted migraines. (Docket No. 7-9 at ECF p. 298). And in her headache questionnaire, the Plaintiff stated that the only way to relieve her headache was to lie down in a dark, quiet room. (Docket No. 7-6 at ECF p. 26).

Additionally, the medical records in this case are replete with references to the Plaintiff's fatigue. (Docket No. 7-7 at ECF pp. 5, 34, 63, 74, 105, 113, 119, 135, 145; Docket No. 7-8 at ECF pp. 13, 16, 367, 372, 412, 426, 456; Docket No. 7-9 at ECF pp. 297). While this medical evidence can stand on its own, the Claimant testified at her oral hearings that she takes a daily morning nap of about two and a half hours and then an afternoon nap for about an hour. (Docket No. 7-2 at ECF p. 52). She also testified that she needs to rest after her afternoon nap, usually until bedtime. (*Id.*). The Plaintiff reiterated this information on her Function Report, a form on which she self-reported more information to the Social Security Administration, (Docket No. 7-6 at ECF p. 29, 48), and to her doctors at least twice. (Docket No. 7-7 at ECF p. 110; Docket No. 7-8 at ECF p. 453).

The ALJ did not point to evidence that contradicts the Plaintiff migraines and fatigue. Rather, he reasoned that he did not have to credit her symptoms "with limits for being off task or absent from work, when the record did not support such limits." (Docket No. 17 at ECF p. 3). As mentioned previously, the ALJ acknowledged that the Plaintiff suffers from a handful of migraines per month. (Docket No. 7-7 at ECF p. 159). However, he did not explain how this medical evidence squares with foregoing any limitation for the need to be off task or absent from work. This is especially important because the Vocational Expert testified that the maximum off-

task rate employers are likely to tolerate is 10% in an eight-hour workday. (Docket No. 7-2 at ECF p. 60). As the Magistrate Judge explains, the ALJ may ultimately decide to reject limitations for off-task time or absenteeism, but the Court must understand why this is so in face of medical evidence suggesting their necessity.

In addressing the Plaintiff's medical and testimonial evidence of fatigue and need for naps, the ALJ only stated at Step Three that though the Plaintiff reported "generalized fatigue," she could still perform a range of daily tasks and manage her medications and finances. (Docket No. 7-2 at ECF pp. 21, 25). Besides making these two statements at Step Three, the ALJ never addressed the Plaintiff's medical evidence of fatigue and need to nap, much less incorporated this functional limitation into the RFC assessment or included them into his question to the Vocational Expert about the Plaintiff's ability to work. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). While the ALJ may ultimately discount the Plaintiff's testimony about her naps and fatigue, he must still properly consider this medical and testimonial evidence on remand.

### B. Sit/Stand Option

In the Plaintiff's Brief in Support of Complaint for Review, she argues that the ALJ's sit/stand option lacks necessary specificity on whether she would be off or on task when standing. (Docket No. 9 at ECF pp. 21–22). The Magistrate Judge mentioned this argument in her Report and Recommendation but does not analyze it. (Docket No. 16 at ECF p. 9). Likewise, the Commissioner does not mention the issue in the Objection to the Report and Recommendation, (Docket No. 17), and the Plaintiff filed no response to the Commissioner's Objection.

Because the ALJ's decision denying benefits is being reversed and remanded for the above reasons, the ALJ is invited to reconsider the specificity of his language on the sit/stand limitation on remand.

## IV. CONCLUSION

For the reasons stated above, the Court **OVERRULES** the Commissioner's objection, (Docket No. 17), **ADOPTS** the Magistrate Judge's Report and Recommendation, (Docket No. 16), **REVERSES** the ALJ's decision denying benefits, and **REMANDS** this matter for further consideration consistent with this Order.

IT IS SO ORDERED.

Date: 08/28/2024

*Matthew P. Brookman*

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

All Electronically Registered Counsel